UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| CERTAIN UNDERWRITERS at ) <br> LLOYD's, LONDON, ) <br> ) <br> Plaintiff, ) <br> ) <br> V. ) <br> ) <br> KENTUCKY SCHOOL BOARDS ASSOC., ) <br> KENTUCKY SCHOOL BOARDS ) <br> INSURANCE TRUST, and ) <br> BOARD OF TRUSTEES of the ) <br> KENTUCKY SCHOOL BOARDS ) <br> INSURANCE TRUST, ) <br> ) <br> Defendants. ) | Civil No. 15-28-GFVT <br><br> **MEMORANDUM OPINION** <br> **&** <br> **ORDER** |

*** *** *** ***

This matter is before the Court on Defendants' motion to dismiss. [R. 9.] The action itself is ancillary to two related cases currently pending in state court. The underlying lawsuits concern claims of unjust enrichment, negligence, and negligent misrepresentation on the part of Defendants related to their recommendation that members of the Kentucky School Boards Association participate in certain self-insured property, casualty, and worker's compensation funds instead of obtaining insurance coverage on the commercial market, and by their receipt of certain payments to that effect. Plaintiff, Certain Underwriters at Lloyds, London ("Lloyds"), has been providing a defense to Defendants in the state-court lawsuits subject to a reservation of rights. After eight months of litigation, Lloyds brought a declaratory judgment action in this Court seeking a declaratory judgment that it owes no coverage to any of the Defendants in any of the related state-court litigation and also seeking recovery on a single breach-of-contract claim. [R. 1.] Defendants move to dismiss Lloyds' Complaint, arguing that the Court should abstain

from exercising its discretion under the Declaratory Judgment Act, and also arguing that Count VII of the Complaint is deficient under Federal Rule of Civil Procedure 12(b)(6). [R. 9.] The Court, having considered the briefing of the parties and the record herein, will GRANT the motion, for the reasons explained below.

**I**

Plaintiff, Certain Underwriters at Lloyds, London ("Lloyds"), filed this action under the Federal Declaratory Judgment Act, 28 U.S.C. §2201(a) (FDJA"), for a determination of whether it is required to defend and indemnify the Kentucky School Boards Association ("KSBA"), Kentucky School Boards Insurance Trust ("KSBIT"), and the KSBIT Board of Trustees ("KSBIT Board") with respect to two pending actions in Franklin Circuit Court. The first is *Kentucky League of Cities Insurance Services Association, et al. v. Kentucky Department of Insurance, et al.,* Case No. 13-CI-1282, and the second is *Joseph N. Pope, Jr. v. Kentucky League of Cities, Inc., et al.,* Case No. 14-CI-1080. [R. 1 at 2.]

Defendant KSBIT was created by KSBA and certain trustees to provide insurance coverage through three separate self-insurance funds for workers' compensation, property and liability, and unemployment, referred to collectively as the "KSBIT Funds." [R. 1, ¶¶ 7-8.] Kentucky law provides for the creation of self-insurance groups who pool their risks for certain claims. Ky. Rev. Stat. §§ 304.48-30, 304.50-010. Each such group is operated by a board of trustees who, among other duties, must ensure that there is adequate funding and that claims are paid promptly. Ky. Rev. Stat. §§ 304-48-140, 304.50-085. According to Lloyds,[1] the KSBIT Funds allegedly operated at a deficit for several years. [R. 1, ¶ 27.] In 2009, KSBIT entered into

---

[1] The facts related herein are alleged in Lloyds' Petition and are not disputed by Defendants. There is some indication that they are based on facts alleged in the related state court lawsuits. [*See* R. 1 at 7-9.]

an agreement with the Kentucky League of Cities (KLC) and the Kentucky League of Cities Insurance Services Association (KLCIS), in which KCL and KLCIS were to manage KSBIT's affairs, and KSBIT was required to abide by KLC's formal recommendations in its capacity as administrator of KSBIT.  [*Id.*, ¶¶ 28-32.]

The claims in the state court lawsuits all arise out of financial deficits in the KSBIT self-insured funds.  In these lawsuits, it is alleged that the KSBIT Board, KLC, and KLCIS improperly approved and made interest payments on certain Surplus Notes which were part of a money transfer from KLCIS to KSBIT.  [R. 1, ¶¶ 32-34.]  As the deficits increased, KSBIT stopped writing coverage for the KSBIT Funds in 2013.  [*Id.*,¶¶ 34-35.]  Consequently, the Kentucky Department of Insurance (KDOI) instituted proceedings to place the KSBIT Funds into rehabilitation.  [*Id.*, ¶ 37.]  On November 5, 2013, KSBIT and others filed a Complaint in Franklin Circuit Court against the KDOI, and the KDOI then filed two actions for declaratory judgment in Franklin Circuit Court to obtain approval of its proposed rehabilitation plans.  [*Id.*, ¶¶ 39-40.]  These actions were consolidated into Case No. 13-CI-1282, and in May 2014, the Franklin Circuit Court approved plans to assess former participants in the KSBIT Funds in order to cure the deficits.  [*Id.*, ¶¶ 40-41.]  The issues of whether the Surplus Notes must be repaid or whether interest payments made on the Notes must be refunded remain pending.  [*Id.*, ¶ 42.]  In August 2014, Joseph N. Pope, Jr., Deputy Rehabilitator of the KSBIT Funds, filed a separate action (the "Rehabilitator Complaint") in Franklin Circuit Court against KSBA, KSBIT and the KSBIT Board.[2]  That action continues.

---

[2]  Up to this point, Lloyd's is providing a defense to KSBA and KSBIT (including the KSBIT Board) in the Rehabilitator Complaint with a reservation of rights.  [R. 9-1 at 2; R. 11 at 3.]

In March 2012, Lloyds apparently issued an insurance policy to KSBA and KSBIT. [R. 1, ¶¶ 1-2, 15-16; R. 1-1.] In the case before this Court, Lloyds alleges it has no duty, or only a limited duty, to defend and indemnify KSBA, KSBIT, and the KSBIT Board under various policy exclusions. [R. 1.] Lloyds additionally alleges that KSBA, KSBIT, and the KSBIT Board breached the terms of the insurance policy and are liable for damages. [R. 1, Count VII.] Defendants urge this Court to abstain from exercising jurisdiction under the FDJA and further argue that Lloyds' Count VII fails to state a claim upon which relief may be granted. [R. 9-1.]

Subsequent to significant briefing on the motion to dismiss, the Court was advised that Lloyds is now a defendant in the Franklin Circuit Court action. [R. 12 at 3.] In June 2015, the state court allowed the Deputy Rehabilitator to amend his complaint in order to pursue a new count against Lloyds seeking a declaration that Lloyds' insurance policy provides coverage to Defendants. [*Id*.] This Court held a hearing to determine the status of the state court suits, during which counsel for Lloyds confirmed that the declaratory judgment action in Franklin Circuit Court is still pending, that the Rehabilitator has filed a motion for summary judgment requesting a ruling on specific exclusions in Lloyds' policy, that the motion is fully briefed and set for a hearing in April 2016, and that the state court in the Rehabilitator's action is considering the same coverage issues as the ones before this Court.

## II

### A

As a threshold matter, the Court must determine if it has subject matter jurisdiction over Lloyds' case. *See Caudill v. N. Am. Media Corp.*, 200 F.3d 914, 916 (6th Cir. 2000) (explaining that the "first and fundamental question presented by every case brought to the federal courts is

whether it has jurisdiction to hear a case") (citations omitted) (internal quotation marks omitted). The parties do not dispute that this Court has diversity jurisdiction under 28 U.S.C. § 1332(a) as Lloyds is a citizen of the United Kingdom, Defendants are Kentucky citizens, and the amount in controversy exceeds $75,000. As the record contains no evidence indicating otherwise, the Court confirms its subject matter jurisdiction in this matter.

**B**

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction … any court of the United States … may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. The exercise of jurisdiction under the Act is not mandatory, especially when a related case is simultaneously pending in the state court. *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494 (1942); *see also Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 812 (6th Cir. 2004). Instead, the Act "confers discretion on the court rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). In other words, although the district court has jurisdiction under the Declaratory Judgment Act, it is "under no compulsion to exercise that discretion." *Brillhart*, 316 U.S. at 494. Indeed, considerable discretion is afforded to the district courts as to whether to exercise jurisdiction "in the first instance, because facts bearing on the usefulness of the declaratory judgment remedy, and fitness of the case for resolution, are peculiarly within their grasp." *Id.* at 289.

Therefore, this Court must determine whether this case is appropriate for such relief. In doing so, the Court should determine primarily whether "the judgment will serve a useful purpose in clarifying and settling the legal relationships in issue," and whether "it will terminate

5

and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F. 2d 323, 326 (6th Cir. 1984) (citations omitted). In making this determination, the Sixth Circuit has identified the following five factors to guide the district courts' exercise of discretion:

>  (1) Whether the declaratory action would settle the controversy;
> 
>  (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
> 
>  (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for res judicata";
> 
>  (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach upon state jurisdiction; and
> 
>  (5) whether there is an alternative remedy which is better or more effective.

*Scottsdale v. Flowers,* 513 F.3d 546, 554 (6th Cir. 2008); *see also Western World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014). These factors are useful benchmarks and must be considered, but the ultimate decision about whether to accept jurisdiction is left to the "unique and substantial" discretion of the Court. *Id.* at 563 (quoting *Wilton*, 515 U.S. at 286). The Sixth Circuit has not assigned weights to the factors, and the factors are not always equal. *Western World Ins. Co.,* 773 F.3d at 759. In considering them, courts should review all the relevant facts "within the considerations of efficiency, fairness, and federalism." *Id.*

**1**

With respect to the first factor, whether the declaratory action would settle the controversy, the *Flowers* court noted a split in precedent regarding how to analyze this factor "in the context of an insurance company's suit to determine its policy liability." *Flowers,* 513 F.3d

at 555. According to the court, "[o]ne set of cases has concluded that a declaratory relief action can settle the insurance coverage controversy not being addressed in state court, even though it will not help resolve the underlying state court action." *Id.* (citing cases). "A different set of cases, however, has found that, while such declaratory actions might clarify the legal relationship between the insurer and the insured, they do not settle the ultimate controversy between the parties which is ongoing in state court." *Id.* (citing cases). The Sixth Circuit has suggested that this split "might reflect both 'competing policy considerations of consolidating litigation into one court versus permitting a party to determine its legal obligations as quickly as possible,' as well as differences in the factual circumstances presented by different cases." *Western World*, 773 F.3d at 760 (quoting *Flowers*, 513 F.3d at 555-56).

    Here, the factual circumstances support abstention regardless of the split in authority. While it is true that the Sixth Circuit has upheld district courts that retained jurisdiction if the action would settle the discrete controversy between the parties before it, the plaintiff in those cases was not a party to the state court action, and therefore the same coverage issue would not be addressed in the state court. *See, e.g., Flowers*, 513 F.3d at 556; *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003). "Where the federal court plaintiff is not a party in state court and the issue of insurance coverage is not before that [state] court, the federal action could sufficiently settle the controversy between the parties." *QBE v. Green*, 2014 WL 7359043, at *2 (E.D.Ky, Dec. 23, 2014) (citing *Flowers*, 513 F.3d at 556). Here, however, Lloyds *is* a party in the state court action brought by the Rehabilitator, and Lloyds concedes that the same coverage issues are being litigated in that suit. On the other hand, "where the state court plaintiff is not a party in federal court, a declaratory judgment would not settle the

7

controversy because the federal court's judgment would not be binding as to the state court plaintiff." *Id.* Here, the Rehabilitator is not a party in the federal case. Accordingly, a declaratory judgment by this Court will not settle the underlying controversy under either the first or second line of precedent because Lloyds is also a party in the state court action, the Rehabilitator is not before this Court, and the scope of insurance coverage is also at issue in state court. *See Flowers*, 513 F.3d at 556.

Moreover, regardless of whether Lloyds is a party in the state court proceeding, if resolution of the declaratory judgement claim would require the federal court "to engage in fact-finding that may affect the underlying action," the court should abstain. *Auto Club Property v. Denton*, 2015 WL 4484173, *4 (W.D. Ky., July 22, 2015). Thus, perhaps even more importantly, this Court's decision cannot settle the ultimate controversy because determining the applicability of the exclusions at issue would require the Court to make factual determinations regarding the allegations that serve as the basis for the asserted liability in the state court suit. In particular, because of the ongoing declaratory judgment action in state court, a judgment by this Court would do little, if anything, to resolve the claims pending before the state court. The underlying tort actions have been proceeding in Franklin Circuit Court for several years. The parties have engaged in extensive discovery and briefing in that court. The Rehabilitator has brought a declaratory judgment action against Lloyds in the state court, and the state court is currently considering the same issues presented to this Court. Thus, instead of resolving the controversy, the potential for inconsistent coverage obligations would further complicate it. *See Bituminous Cas. Corp.*, 373 F.3d at 813-14 (abstaining from jurisdiction when "[t]he federal court could either reach the same conclusion as the state court, in which case the declaration would have

8

been unnecessary and the federal litigation a waste of judicial resources, or the federal court could disagree with the state court, resulting in inconsistent judgments."); Therefore, the first factor weights in favor of abstention in this case. *See Auto-Owners v. Egnew*, 2016 WL 310365 *6 (E.D.Ky., Jan. 25, 2016); *Bituminous Cas. Corp. v. Kinzer Drilling Co.*, 2014 WL 5685541, *3 (E.D. Ky. Nov. 4, 2014) (finding that because of "policy considerations for encouraging consolidated litigation in one court over piecemeal litigation of separate claims in separate courts," retaining jurisdiction would not serve a useful purpose when the litigation would not settle the broader controversy between the parties).

**2**

The second factor, whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations in issue, "is closely related to the first factor and is often considered in connection with it. Indeed, it is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue." *Flowers*, 513 F.3d at 557 (citations omitted). The concern here is whether the federal declaratory judgment will resolve, "once and finally, the question of the insurance indemnity obligation of the insurer." *Id.* at 557. Here, because of the Rehabilitator action, and because the Rehabilitator has not been made a party to the instant action in federal court, it is questionable whether any judgment in this Court would be binding as to him, and thus a decision by this Court may not resolve the controversy among the parties involved in this case. *See Bituminous Cas. Corp.*, 373 F.3d at 814; *see also Travelers Indem. Co. v. Bowling Green Prof'l Associates, PLC*, 495 F.3d 266, 272 (6th Cir. 2007) (finding that first two factors weighed against federal jurisdiction when there were parties who could be affected by the federal court's judgment but were not joined as

9

parties in the federal district court's action); *Green*, 2014 WL 7359043, at *2 ("where the state court plaintiff is not a party in federal court, a declaratory judgment would not settle the controversy because the federal court's judgment would not be binding as to the state court plaintiff"). Retaining jurisdiction would risk inconsistent rulings concerning Lloyds' coverage obligations, and therefore would not bring lasting clarity to the legal relationships at issue.[3]

To the extent that Lloyds argues the instant suit could provide needed clarification in order to prevent being "forced into a waiting period of legal uncertainty respecting the obligations it has incurred in its policy," *Western World,* 773 F.3d at 760-61, because the coverage dispute in the state court is already fully briefed and a hearing is scheduled for April 2016, a judgment by this Court would not clarify Lloyds' obligations in a more timely fashion. To resolve the instant dispute in this Court would take significantly longer because discovery has not begun and the federal record is "virtually devoid of facts about the underlying tort actions" sufficient to support the Court's determination. *Brotherhood Mut. Ins. Co. v. United Apostolic Lighthouse, Inc*., 200 F. Supp. 2d 6689, 693 (E.D. Ky. 2002). Indeed, both factors one and two in this case are compounded by the lack of a factual record, without which this Court cannot adequately determine the extent of Lloyds' obligations anyway. *See Travelers*, 495 F.3d 266 at 273. The question of Lloyds' obligations will be resolved much sooner by the state court. Thus, the Court cannot see that a federal declaratory judgment action would be more "useful" in clarifying the legal relations at issue than would the state declaratory action. As explained above, given the complexity and factual overlap of the issues in the related state court suits, the declaratory judgment action will not resolve the ultimate dispute, and rather than clarifying

---

[3] Moreover, the five factors must be balanced against each other, and "clearly factor one – resolving the ultimate dispute – should weigh more heavily than factor two – just resolving some legal relation at issue." *Grange Mut. Cas. Co. v. Safeco Ins. Co. of Am*., 565 F. Supp. 2d 779, 788 (E.D.Ky. 2008).

anything, may only delay and complicate matters further. Therefore, this second factor also weighs in favor of abstention.

**3**

The third factor asks "whether the use of the declaratory judgment action is motivated by 'procedural fencing' or likely to create a race for *res judicata*." *Flowers*, 513 F.3d at 558. It "is meant to preclude jurisdiction for 'declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff' and who seem to have done so for the purpose of acquiring a favorable forum." *Id.* (quoting *AmSouth Bank v. Dale*, 386 F.3d 763, 788 (6th Cir. 2004)). A primary consideration is "whether the declaratory plaintiff has filed in an attempt to get her choice of forum by filing first." *Id.* When the declaratory judgment "plaintiff has filed his claim after the state court litigation has begun, we have generally given the plaintiff 'the benefit of the doubt that no improper motive fueled the filing of [the] action.'" *Id.* (quoting *Bituminous*, 373 F.3d at 814). Here, Lloyds filed the instant suit at least eight months after the state court litigation had begun, and there is no evidence in the record of an improper motive in doing so. Therefore, the third factor weighs against abstention. *See Flowers*, 513 F.3d at 559, 563 (indicating that absence of improper motive by declaratory judgment plaintiff points toward exercising jurisdiction); *Bituminous*, 373 F.3d at 814.

**4**

The fourth factor requires the Court to consider whether the declaratory action would increase the friction between federal and state courts. The "mere existence" of an ongoing related proceeding in state court "is not determinative of improper federal encroachment upon state court jurisdiction." *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1067 (6th Cir. 1987).

However, the Supreme Court has cautioned that "where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in gratuitous interference, if it permitted the federal declaratory action to proceed.'" *Flowers*, 513 F.3d at 559 (quoting *Wilton*, 515 U.S. at 283). To avoid that situation, three sub-factors should be considered:

> (1) whether the underlying factual issues are important to an informed resolution of the case;
>
> (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
>
> (3) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Id.* at 560. This fourth factor primarily considers whether the state court is likely to be in a better position to evaluate the factual issues than the federal court. *See Western World*, 773 F.3d at 761. ("The fourth factor and its subfactors reflect concerns about principles of federalism.").

**a**

The first sub-factor "focuses on whether the state court's resolution of the factual issues in the case is necessary for the district court's resolution of the declaratory judgment action." *Flowers*, 513 F.3d at 560. Sometimes declaration of insurance coverage can be resolved as a matter of law, and factual findings by a state court are unnecessary to that determination. *Id.* (citing *Northland Ins. Co.*, 327 F.3d at 454). In such cases, federal jurisdiction may be suitable. *See id.* However, if the issues raised in the federal case require making factual findings that might conflict with similar findings in state court, "exercise of jurisdiction would be inappropriate." *Id*.

Defendants argue that a declaratory judgment by this Court depends on the application of facts to the insurance policy, and thus the facts established in the state court proceedings will affect any determination about Lloyds' obligations. [R. 9-1 at 6-7.] Although Lloyds contends the coverage issues may be determined as a matter of law, counsel for Lloyds conceded at the hearing that the same coverage issues are presently before the state court, and therefore a possibility of conflicting judgments exists. Because the primary concern with this sub-factor is that of comity, a federal court in this situation should avoid conflicting factual determinations with the state court. *Flowers*, 513 F.3d at 560. Thus, if a federal declaratory judgment action involves the same underlying factual issues that are pending in a related state court action, the federal court should generally abstain so as to avoid subjecting the parties to competing rulings. *See Travelers*, 495 F.3d at 272; *Bituminous*, 373 F.3d at 816.

Here, as explained above, not only would determining the scope of coverage depend to some extent on the applicability of the policy exclusions to the facts of the underlying tort suit, but also the same coverage issues are before the state court in the Rehabilitator's suit. Moreover, while the state court proceedings have involved extensive discovery and have developed a record spanning nearly two years, resolution in this Court will be further complicated by the comparative lack of a factual record. *See Allstate Ins. Co. v. Mercier*, 913 F.2d 273, 278 (6th Cir. 1990) ("without any factual record, there is a real possibility that the district court's declaration of no coverage would conflict with a state court's determination of the coverage question after being informed of the facts"). Accordingly, the strong likelihood of conflicting rulings and inconsistent judgments with the state court weighs in favor of abstention. *See Denton,* 2015 WL 4484173, at *5 (noting that when the federal court must engage in fact-finding

concerning similar issues as those before the state court, the federal court's exercise of jurisdiction will "encroach on the state court's jurisdiction").

**b**

The second sub-factor also weighs in favor of abstention. This sub-factor "focuses on which court, federal or state, is in a better position to resolve the issues in the declaratory action." *Flowers*, 513 F.3d at 560. State courts are generally better suited to resolve novel questions of state law. *Id.* Here, Defendants offer no showing that Kentucky law is unsettled in this area, or that any novel questions of insurance law are involved.

Novelty, however, is not the only concern. The Sixth Circuit has found that "issues of insurance contract interpretation are questions of state law with which Kentucky state courts are more familiar and, therefore, better able to resolve." *Travelers*, 495 F.3d at 273 (quoting *Bituminous*, 373 F.3d at 815). The instant case involves only questions of state law such as insurance contracts, which, in the interests of comity and federalism, are better interpreted by the Kentucky state courts. *Bituminous*, 373 F.3d at 815. Thus, even if no novel issues of state law are involved, the federal court is not necessarily in a "better position" to resolve these issues than the state court because even if the Court could hear the case there is no reason that the Court *must* hear the case. *See Flowers*, 513 F.3d at 560. When both forums would apply Kentucky state law, "because Kentucky law is controlling," the "Kentucky courts are in the better position to apply and interpret its law on [insurance contract] issues." *Travelers* at 272.

This need not always be the result when insurance contracts are in dispute. "[W]hen an insurance company is not a party to the state court action, and neither the scope of the insurance coverage nor the obligation to defend [is] before the state court . . . a decision by the district

court on these issues would not offend principles of comity." *Flowers*, 513 F.3d at 560 (citing *Northland*, 327 F.3d at 454). Here, however, Lloyds *is* a party to the state action, and the factual record on the same issues concerning scope of coverage is better developed there. Thus, the Franklin Circuit Court "is in [at least] a marginally better position to decide the issues in this case because all issues are before the state court and involve questions of state law." *Denton,* 2015 WL 4484173, at *6 (citation omitted); *see also Travelers*, 495 F.3d at 273.

c

The third sub-factor "focuses on whether the issue in the federal action implicates important state policies and is, thus, more appropriately considered in state court." *Flowers*, 513 F.3d at 561. With respect to this final sub-factor, the Sixth Circuit has held that

> [i]ssues of insurance contract interpretation are questions of state law with which the Kentucky state courts are more familiar and, therefore, better able to resolve. The states regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation for such regulation.

*Flowers,* 513 F.3d at 561 (internal citations and quotation marks omitted). The Sixth Circuit also has recognized that concerns about comity and federalism concerning state policy "frequently appl[y] in cases of insurance contract interpretation and we have held on a number of occasions that a district court should stay or dismiss complaints filed by insurance companies seeking a declaratory judgment as to their underlying state court lawsuits." *Travelers*, 495 F.3d at 273 (collecting cases); *see also U.S. Fire Ins. Co. v. Albex Aluminum, Inc.*, 161 F. App'x 562, 565-66 (6th Cir. 2006) (unpublished table decision) (noting that the possibility of "friction" with the state courts is increased where a case turns on questions of state law that "arise in a field [that] is

15

largely reserved to the states and thus implicates public policy considerations that form the foundation of state regulation of insurance.").

Because the instant case centers on the interpretation of an insurance contract, Lloyds concedes that this sub-factor either weighs in favor of abstention or is at least neutral [R. 11 at 13], and the Court agrees. Even though this Court is capable of weighing such public policy considerations, "the Sixth Circuit's precedent unequivocally states that a Kentucky state court is better situated to handle this task." *Egnew*, 2016 WL 310365, at *8. Moreover, because this case was brought pursuant to the Court's diversity jurisdiction, and neither federal common law nor federal statutory law apply to the substantive issues presented, Kentucky courts are in the better position to evaluate and enforce the state law and public policy involved. *Bituminous*, 373 F.3d at 816; *see also Travelers*, 495 F.3d at 273 ("This is not a case where federal law will come into play, and, therefore, a state court forum is preferable."). Therefore, the third sub-factor also weighs in favor of abstention.

In sum, all three sub-factors oppose jurisdiction. Given the extensive litigation taking place in the state courts, and the extensive overlap of factual determinations, this is clearly a situation in which the state court suit presents the opportunity for "ventilation" of the same state law issues, and therefore the Court should abstain from jurisdiction. *See Wilton*, 515 U.S. at 283; *Travelers*, 495 F.3d at 273 (concluding that a "close nexus between the underlying factual issues and state law and public policy favor a decision by the state court instead of the federal court").

**5**

Finally, the Court considers the fifth factor – whether there is an alternative remedy that is better or more effective than a federal court ruling. *See Flowers*, 513 F.3d at 554. Lloyds

clearly has alternative remedies. One such alternative is to seek a declaratory judgment in state court, which would allow Lloyds to seek the same relief either alone or with other relief. *See* Ky. Rev. Stat. § 418.040. Proceeding in state court would have the advantage that "Kentucky courts might also [be] able to combine the two actions so that all issues could be resolved by the same judge," which is generally considered a preferable option. *Flowers*, 513 F.3d at 562. Especially in the instant case, because there is already a declaratory judgment action pending, the state court remedy is likely the superior one.

Although Lloyds contends that the posture of this case presents a situation in which diversity jurisdiction would be particularly appropriate, in light of the fact that it is a foreign defendant who may be required to replenish funds for school boards around the state [R. 11 at 14-15], Lloyds does not present any evidence of bias in the state court. "We question the need for . . . declaratory judgments in federal courts when the only question is one of state law and when there is no suggestion that the state court is not in a position to define its own law in a fair and impartial manner." *Bituminous*, 373 F.3d at 816-17 (quoting *Am. Home Assur. Co. v. Evans*, 791 F.2d 61, 63 (6th Cir. 1986) (internal quotation marks omitted)). Moreover, "declaratory judgment actions seeking an advance opinion on indemnity issues 'should normally be filed, if at all, in the court that has jurisdiction over the litigation which gives rise to the indemnity problem.'" *Grange*, 565 F.Supp.2d at 791 (quoting *Bituminous*, 373 F.3d at 812). When related actions are filed in two separate courts, "confusing problems of scheduling, orderly presentation of fact issues and *res judicata* are created." *Id.* at 791 (quoting the same).

Alternatively, Lloyds could presumably file an indemnity action after the underlying state action has been resolved. *See Flowers*, 513 F.3d at 562. An indemnity action is generally

considered an inferior alternative to the federal declaratory judgment action when the plaintiff would have to join the underlying state action and wait until its conclusion to obtain resolution of its obligations. *Flowers*, 513 F.3d at 562. Here, however, Lloyds is already a party in the Rehabilitator suit pending in Franklin Circuit and there would be no further delay in clarifying its status. Even if some delay did occur, the state forum is still not necessarily an inferior forum to the federal court, particularly when the state court is in the midst of resolving related issues, as is the case here. *See id.* Indeed, if this Court were to retain jurisdiction, the delay would likely be much longer. Therefore, on balance, the fifth factor also weighs in favor of abstention. *See Travelers*, 495 F.3d at 273 (upholding district court's determination that fifth factor weighed against federal discretionary jurisdiction when insurers could utilize Kentucky's declaration of rights procedure in state court or could file an indemnity action); *see also Bituminous*, 373 F.3d at 816 (finding a superior alternative remedy exists when a party could bring a declaratory judgment action in the "same court that will decide the underlying tort action" and when "the issues presented involve questions of state law only").

**III**

Federal courts are courts of limited jurisdiction, and they are "particularly reluctant to entertain federal declaratory judgment actions premised on diversity jurisdiction in the face of a previously filed state-court action." *Adrian Energy Associates v. Mich. Public Service Comm.*, 481 F.3d 414, 421 (6th Cir. 2007). In the case at hand, only the third factor weighs in favor of retaining jurisdiction while the other four factors point toward abstention. This assessment is supported by the overarching principles concerning declaratory judgment actions such as the declaratory judgment's potential usefulness, and whether it will "terminate" the uncertainty and

controversy giving rise to the dispute. *Grand Trunk*, 746 F.2d at 326. As explained above, because Lloyds is also a party to the state court action, while the Rehabilitator is not a party to the instant suit, and because of the significant overlap of issues and factual determinations with the state court proceedings, this Court's exercise of jurisdiction will not serve any useful purpose, nor will it provide certainty to the parties concerning their legal obligations. If anything, retaining jurisdiction will only serve to delay ultimate resolution and cause the parties to litigate on two fronts, which, given the lack of factual record in the federal case and the advanced posture of the related state court suits, would not promote considerations of efficiency or of federalism. *See Western World*, 773 F.3d at 759. Accordingly, and in reliance on the Court's "unique and substantial" discretion, *Flowers*, 513 F.3d at 563, it is hereby **ORDERED** as follows:

    1.    The Defendants' Motion to Dismiss [**R. 9**] is **GRANTED**;

    2.    Lloyds' Petition for Declaratory Judgment is **DISMISSED without prejudice**; and

    3.    Because the Court abstains from resolving the coverage issues, and in light of the parties' concessions at the hearing, Lloyds' claim for breach of contract is **DENIED as moot**.

This the 9th day of March, 2016.



Gregory F. Van Tatenhove
United States District Judge